Our next case is SoftView v. Apple and Motorola Mobility, 2023, 10.05 and 10.07. Good morning, Mr. Berman. Good morning. Alan Burnett for Appellant SoftView LLC. After a decade of prosecution, the board came to the conclusion that all claims on appeal were patentable over the art of record under 103. But the board issued a new ground of rejection under what they call Claim Cancel Estoppel to CFR 42.73 D3I. The examiner had found the claims unpatentable, right? No, the examiner was reversed on all the claims. Yes, but the examiner's finding was obvious. Some of the claims the examiner found were patentable. And the board reversed those? The board reversed those, too. On the estoppel? On the estoppel, yes. And so this has never been applied in an inter-party re-exam, and we argue it shouldn't be applied to issued claims as well. But rather than, in addition to that, rather than apply common-law collateral estoppel, which they acknowledge, the board acknowledges, not present, they did a redo of the claim construction and did not use the claim construction in the IPRs, but came up with the correct construction. And they used that as the baseline for comparing whether the claims were patently distinct or not patently distinct from the cancel claims. In addition to that, they applied an obviousness-type double-patenting standard for what was patently distinct, as opposed to what was described in the rule during the promulgation and what is in the definitions under Section 42, that same or substantially the same is patently distinct or patently indistinct. Excuse me. So I'd like to go to the literal language of the rule. So moving down to Part D, estoppel. Patent owner, applicant or owner is precluded from taking action inconsistent with the adverse judgment, including obtaining, in any patent, a claim that's patently distinct from a fondly refused or canceled claim. Now, as I mentioned, how do you obtain a claim that's already been issued? Well, the board argued that in distinguishing so soft you pointed to two IPRs where the board said the claims are issued so this does not apply. And the board distinguished that by saying, and this is in green brief at page 18, quoting what the board stated is, unlike inter-party reviews of issued claims where patentee is merely defending a claim against the charge of unpatentability, the board found that because reexamination is based on an examinational and not a judiciary model, it's conducted according to the rules of examination, then confirming a claim in a reexamination is the same as obtaining a claim and is actually an examination for the purposes of rule. Now, the board said obtaining includes maintaining a patent already granted and the regulation includes an owner. So there already is a patent. Yes. So now the board tries to distinguish that an inter-party reexamination is fundamentally different than an inter-party review. That's not what the court in Cuso, which is cited in the brief for the director, in support of promulgation of this rule, having authorization to do so. Could I follow up on Judge Lurie's question because I had the same question that I wanted to get your view on? What significance do you think should be attached to the fact that the regulation uses the term owner, vis-a-vis your argument that the regulation only applies to the obtaining of a patent, which would not apply to an owner of the patent? That was to apply to, I believe, for reissues and continuations. So a reissue, you have the same owner. And discussed during the promulgation specifically, identified this would apply to continuations and reissues. Okay. So just briefly, the first paragraph of Cuso states the Lee-Smith American Events Act creates a process called inter-parties review. That review process allows a third party to ask the USPTO to reexamine the claims in an already issued patent and cancel any claims the agency finds are unpatentable in the light of priority. And then at page 16 of Cuso, the court says, the name and accompanying procedures suggest the proceeding offers a second look at an earlier administrative grant. Although Congress changed the name from reexamination to review, nothing convinces us that in doing so, Congress wanted to change its basic purposes, namely to reexamine the earlier agency decision. And I'd also like to point out in Rule 304, Rule 304 says, if the director finds a substantial new question of patentability affecting any claim of the patent is raised, the determination will include an order for reexamination of the patent for the resolution of the question. So... Counsel, why are these claims patentably distinct? Okay. They're apparently distinct. Okay. So we have two claim constructions. In the IPR, the claim construction was that only the translated portion of the HTML content needed to be preserved, which means you could skip however much of that content you have. Under the correct construction, which is the construction that Sofie argues would apply to physics, the Phillips would apply here because it claims the patents have expired, but the PTAB identified it was you have X, A, B, and C, and A is preserving the layout functionality and design, and X is HTML code that doesn't apply to that. So I'll give you an example of what the differences look like. If you look at Blue Brief, page 60. 60? 60. 6-0. Okay, so this is a comparison of what you get with PAD++ on these pairwise on the left, and what those web pages look like when rendered using Netscape, which had the Mozilla rendering engine, which was the rendering engine that was disclosed in the patent, and the basis in part for enablement in patents. So you can see there's just a dramatic difference in outcome, and, I mean, it's hard to have any demonstrative that's more different than what you get there. Also, I'd like to move on, if I could, to Posita. I'm using that term if you want it, Poza or Posita, because it's... You're talking about a person with skill in the art? A person having ordinary skill in the art. So the person having ordinary skill in the art is very important here. And in the patent, there's a section that identifies, and it is on column... Which way is it? Okay, it's on column 17, lines 31 through 41 of the 353 patent, which is the joint appendix, blue brief, 250. It's also discussed, this is on the blue brief, page 34, and it quotes a section, a paragraph that says, As will be recognized by those skilled in the art, the functions performed in blocks 150, 152, and 154 are commonly performed by conventional browsers during a pre-rendering process. In some browsers, these functions are performed by the Mozilla rendering engine, which comprises open-source software and is readily available. What was claimed in the original claims, one in all the claims in the 353 patent, is how Mozilla operates and how that would be construed by someone, a person of ordinary skill in the art. This is demonstrated on a blue brief, page 49, and it shows that you have a web page, you have HTML version information, and then you have a head, and then you have a body. And the HTML version information, the head, does not define, it is part of the HTML content, it doesn't define the original page layout functionality and design of the web page. So that is parsed, but it's not translated. The body, which defines the original page layout functionality and design of the web page, is parsed, processed, and translated under the claims. And the original claims, including claims one and 36, which were cancelled in the IPRs, use the terminology at least a portion, but the reason that's in there is so someone can say, well we don't translate the HTML version or the head information, so therefore we don't infringe. So that's where that language at least a portion comes from. Now for something like claim 87, it doesn't use at least a portion language at all, it just explicitly says that the original page layout functionality and design of the web page is preserved. So that was the reason for why that language was included, that was the reason for why that paragraph was included for enablement purposes that discussed Mozilla. And elsewhere we've identified by our declarant expert Wolf, who was formerly named Paul Collins, Scott Collins, excuse me. Counselor, you would agree with me, wouldn't you, that Congress gave authority to the PTO to promulgate its own regulations to handle its process and procedures? I would agree to the point of, yes, of the proceedings, but... Well, why is this any different then? I mean, basically we're looking at a proceeding, and estoppel is a rule of procedure. So maybe you can help clarify why this is a... Okay, so they're saying that under 316D, this is where they get the authority to do this. It's found in that regulation. And under... So in... See, the rule that you just cited, 316B, the statute... Oh, I'm sorry. 316A4. A4. A4. Yeah. So it says the relationship of such review to other proceedings. So that's the relationship to it. And which is already, which is addressed in 315D that discusses that when you have multiple proceedings during the pendency of the interim jury exam, you can provide for a state transfer, consolidation, or termination. Now, getting back to Judge Rainer, your question is, SAWVIEW has no issue with respect to applying common law collateral estoppel. But that's not what is done here. In fact, all parties other than SAWVIEW says, we don't need to apply the rule of common law collateral estoppel. And as the Board identified during claim construction, it's not present. In fact, the Board would not even let SAWVIEW argue why it wasn't present. They've acknowledged that it wasn't present. This court in the regents of University of Minnesota versus LSI in dictum, the judges said that the rule would require using, evaluating the common law collateral estoppel and res judicata. That's not what the court did here. And I want to get back to... Could I ask you a question just before you run out of time? If we agree with you that it was inappropriate for the Board to apply the estoppel rule as they have designed it, would you agree that the proper disposition would just send us back for the Board to decide whether to use an alternative method of reviewing the patentability of these pending claims? No. I would say that would be... Well, let me point you to footnote 6 in the Board's opinion, JA69, where they say we are not, we exercise our discretion not to pursue that path, that is to say an alternative basis for the ruling at this time. Doesn't that suggest that they have decided for the present purposes to use the estoppel rule rather than a different way of addressing the patentability? Well, there are other issues raised. Okay. So here's the fundamental problem that SOFU has with that. I mean, if it goes back to the Board for review, that's going to run out the clock on these patents. They're not going to be... These claims were found by Judge Stark in 2015 in an earlier litigation that all these claims now that are in the inter-party re-exam were dismissed without prejudice. And this is going to preclude, if it gets sent back to the Board, it's like they get yet another bite. By the time it gets back to this Court, it's going to be six years past expiration or very close to that. Well, if that's proper, that's proper. I mean, that's not a reason not to... Well, I understand, but I just don't see them getting yet another bite of the apple. Why would they be allowed to pursue that? Well, it's not atypical at all that if a tribunal, whether it's a board or a district court, decides, okay, I'm going to decide this on ground A. I'm not going to just address ground B for present purposes because ground A is a more straightforward basis for ruling. And then the Court of Appeals said, you're wrong about ground A. Typically, what we would do is to say, okay, now tell us whether you think ground B is correct. That sounds like, from the footnote 6 and also the text, where they say there is currently insufficient articulated reasoning, which would suggest that an option is to send it back to the examiner for further review. Those are all signals to us that the Board is not done with this case, even if we reverse them on the issue on which they predicated their judgment. Doesn't that make sense? I don't think it does make sense. I mean, your argument is that that's piecemeal decision-making. Yes. And, I mean, they have already reversed the examiner on 103. They've issued a new ground of rejection. And now you're saying, okay, the new ground of rejection is wrong, so we go back to 103? I just don't think that's proper. Counsel, your time has well passed, so we'll give you three minutes for rebuttal. Let's hear from the other side. And please set Ms. Mather's time for 11 minutes, and we'll give Ms. Rashid six minutes. Please proceed. May it please the Court, Sonal Mather on behalf of Appellee Motorola Mobility, arguing for the appellees. Your Honor, I want to start by addressing Judge Rayna's question with respect to the authority to promulgate the rule, then I can address the application of the rule, and then, of course, happy to talk about the patentable distinction questions that came up during the argument or that are raised in the briefing. First, with respect to the authority to promulgate the rule, 316A.4 gives the Patent Office the ability to issue rules that govern the interaction between IPR proceedings and other proceedings under that title, and that's precisely what Rule 4273 does, is it governs the interaction between the IPR and the inter partes re-exam that's pending before the Patent Office. So that's the authority under which the Patent Office promulgated the rule. With respect to the application of the rule, the application of the rule governs precisely a scenario like this one, which is a scenario in which a patent owner or a patent applicant, and the word owner there means something, it has to mean something, patent applicant or an owner cannot take action that's inconsistent with an adverse judgment. That is precisely what the Board correctly found is happening here. This is a set of claims where there's a thicket of 322 claims that mix and match a tremendous number of limitations. So what about the language in Section 4273D3, the obtaining, including obtaining language? Yes, Your Honor. Two points on that. First is, of course, what it says is you cannot take action inconsistent with an adverse judgment, including. So the obtaining is an example of taking action that's inconsistent with the adverse judgment. That's one. Second, in this particular case, as the Board correctly found, obtaining a claim. You're looking for a really broad reading of this. Well, Your Honor, I'm looking at the language of that particular regulation, and that's what the regulation says. It says can't take action inconsistent with an adverse judgment, which makes sense because the whole point of giving the Board, or the Patent Office rather, the ability to govern proceedings is that you're making sure the proceedings of the Patent Office is dealing with. You're saying including isn't exclusive. That's right, Your Honor. Including is not exclusive. But even if you were not to want to go that far, if we look at obtaining, we have to look at obtaining in the context of a reexamination proceeding. This is an examination proceeding that is to proceed like original examination, not an adjudicatory proceeding. So the Board correctly found that obtaining in this particular instance means obtaining the claim through a reexamination as an examination proceeding that proceeds like an original examination, not simply confirming the claim. So obtaining confirmation, in other words, is obtaining because you're doing it in a reexam context. Now, if this were a case in which the – well, I guess it is a case in which we have to decide what the Board means by the term obtaining. Normally, I would have expected to see a citation to Chevron or Auer or Kaiser or a citation maybe to Cuozzo other than for the reasons that you cited, which don't have anything to do with deference. But there is a whisper in your brief about deference to the agency, and I'm just – I found that quite odd. Are you running away from Chevron and Auer? Why weren't those cases cited to us? No, Your Honor. So I think we did. I think we did. I have to go back and look. You have one word. I think we did. One sentence in which you talk fleetingly, and I think it's in the summary of argument, and you use the word deference. But that is it. Are you pressing upon us deference in this case? Yes, Your Honor. Why isn't it in the brief? So, Your Honor, you're correct that we do refer to it. We probably don't explain it in as much detail as we could have. No detail at all. No, Your Honor. The Patent Office, of course, has submitted its own brief in explaining its own deference. In which it doesn't cite any of those cases either. And, Your Honor – It sounds like a conspiracy of science. It is not, Your Honor. I will say I think it is – we are certainly pressing deference when it comes to the Patent Office's ability to issue its own rules. The question is what to make of the word obtaining. Yes. And that question, 10 years ago, this case would have been crawling with citations to our saying that the agency gets to tell us what the word means. What the word means, it's not confining to getting from in the first instance the patent. But now, silence. Your Honor, I think – I think, number one, I think you don't – Is it because you anticipate that any day now we'll get an opinion from the Supreme Court that it's no longer viable and you didn't want to put yourself in the position of having to face that? That's not the reason, Your Honor. I mean, whether or not that happens or not, we will all wait and see what happens in the Supreme Court. In this particular case, the reason that we don't have to rely heavily on deference when it comes to interpretation of obtaining is because I don't think it matters to the outcome of the interpretation of 4273. Because, number one, obtaining has to mean obtaining in the context of an examination claims, which an inter partes re-exam is. And, two, it's part of the including clause. So we have the first part of that regulation, which is you can't take action any given day. It's a very odd – it's a very odd construction to say including X, but also, inferentially, including things that are not X. That is, in this context, that strikes me as it would be a very strained way to write the regulation. Maybe it's barely plausible, but it certainly isn't obvious. Your Honor, I respectfully disagree with that. And the reason is because including is meant to suggest that that's an example that's not limiting, that that's not limiting the scope. The primary thrust of this regulation, because we have to go back to what the purpose of 316 is, is to govern the interaction between proceedings before the board. And as the board said in its decision, consistent with the desire to process these proceedings as efficiently as possible, and consistent with the public notice function from having an IPR result and having the public be able to rely on that, it makes sense that you would say a patent owner or an applicant cannot do something that's inconsistent with an adverse judgment in another proceeding before the board, which is what this rule says. And they give an example, and they say it includes the obtaining, which we think covers the circumstances. Let me ask you another question. As to the scope of the authority that Congress has given the board – not the board, the agency – to promulgate regulations, I agree with you that 316a.4 is the appropriate statute. The question is, how much discretion have they given the agency? The agency presumably could not simply say that principles of obviousness don't apply to proceedings that follow an IPR decision. Or presumably you would agree with me that they couldn't say, well, if there's an IPR decision with respect to one patent, then all related patents in any further proceedings before the agency will be governed by a rule requiring the patentee to meet a burden of proof of showing validity. You would agree that those wouldn't be valid applications of the authority that the agency's been given, right? Yes, Your Honor. I think – I certainly am not suggesting that there's unfettered – So why is the difference between – why is the difference – and we have to all agree there is a difference between patently distinct and initially obvious. I mean, it's – there's a difference between the two. Why is that difference something that the agency can bridge with a regulation since it does change the circumstances in which patentability would be decided? So, Your Honor, what it's doing is it's governing the interaction between the two proceedings. But that would be true of my example as well. I would be saying in the second proceeding after an IPR in which you lose, then any further proceeding with related patents, you bear the burden of proof, Mr. Patentee. But you just – you agree that you could – they couldn't do that. I – well, actually, now that you're saying it again, I'd want to think about whether they could do that or not. What I agree with is they certainly don't have unfettered access to just issue any rule they want that governs the procedure. So why is this okay and my hypothetical rule not okay? The reason this is okay is what they are doing is they're saying once you have had a procedural ability to deal with the challenge to your claim and your claims have been found unpatentable, once you've had an ability to deal with that in one proceeding, we're not going to let you come back and get a second bite at the apple in another proceeding. And that is governing – Well, the question is what is the bite at the apple? You know, how big a bite are you prohibited from taking? The bite at the apple is the patentable indistinction between the claims, which is to say if you have one claim and it's been adjudicated and you had your day before the board, you do not get to come back and say on another claim that is not patentably distinct, I want a do-over. And that makes good sense because the purpose of these regulations is to allow for, again, as the board found, the process at the patent office to be efficient. They cannot be in a situation in which people can just come back over and over and over again on claims that are not patentably indistinct and say, well, you know, forget this IPR, which already found all of this, all of this to be unpatentable. I now have a claim that's not patentably indistinct, but I'm going to go through the process again. The board found rightly – So the element of patently indistinct does not exist in the common law principle of estoppel, right? So the – I think the language would be different in the common law collateral estoppel circumstance. Yes. So what you've done is you've taken the common law principle of estoppel and created a hybrid of sorts. I wouldn't agree with that characterization, Your Honor. What I would say is this. In common law collateral estoppel, you're – Well, you've changed it. Well – You've added to it. I wouldn't – again, I wouldn't quite agree with that, and here's why. The reason I wouldn't agree with that is this. Well, the common law concept of estoppel doesn't have a patently distinct requirement. No, but it does – You've added it for these purposes. It does require that there be a material difference. So why isn't that a substantive rule? So – You're looking to knock out a claim, someone who has acquired a right in a patent, and to – you've given yourself the ability to deny that. Why shouldn't I look at that as being a substantive change or a substantive rule as opposed to a procedural rule that I think we all agree that you're entitled to do, but I don't think we've agreed that you're entitled to undertake substantive legal changes. Two responses to that, Your Honor. First is, under common law collateral estoppel, you still have to look to see whether or not there's a materially different question of patentability that's come up. So the words patentably indistinct may not appear in exactly that form in common law collateral estoppel, but the fundamental question about whether or not you've considered the issue of invalidity or you have to consider a new issue of invalidity is at the core of common law collateral estoppel. Second, with respect to your question on whether or not this is procedural or substantive, would say two things. One is, collateral estoppel, this Court has found, is a procedural question, not a substantive question. But two, under 316A4, you don't need to reach that because we would agree with you that if you were looking at Section 2 and the authority under Section 2, there might be a question about whether this is procedural or substantive and whether that matters. But under 316A4, which we submit is more than sufficient for authority for the Board to have promulgated this rule, you don't need to worry about whether it's procedural or substantive, even though collateral estoppel under the common law would be procedural and this is really fundamentally no different from that. But to follow up on Judge Raina's question, if I understood your first answer to Judge Raina, you were saying that this patentably distinct is no different from the rule that would apply into collateral estoppel in a conventional common law sense. You said it's really no different. You know, what I said was that the core question is the same. I would agree that there are differences in the factors. Okay. You could get different results. Yes. You have to acknowledge that. There could be circumstances, absolutely there could be circumstances. So it's a different rule. It is a different rule. The factors that may go into considering the rule and the outcome may be different. That's right. The underlying impetus is the same, which is to make sure that people can't have multiple bites at the apple. But we don't disagree that there are different rules with different factors. Thank you, counsel, for your argument. Thank you. And let's hear from the patent office. Good morning, and may it please the Court? Judge Bryson, to start off with your question on deference. I think we're giving her six minutes. We believe that the Board's decision is correct, and it is the best reading of the statute. But we are comfortable foregoing a request for deference here, primarily because we don't think we can reasonably ask for that in light of the fact that this is a non-presidential Board decision. You're foregoing our giving you deference? Can you say that again? What is it that you're foregoing? We are not asking for deference. This is an ordinary Board decision under Kaiser v. Wilkie. It doesn't necessarily have the ability for deference. I understand. So in none of these Board decisions, I take it, that stand for the proposition that previous Board decisions were presidential, I take it? That's correct. Okay. And the office has not otherwise announced a construction of this regulation? Not yet. This regulation doesn't get applied very often. Okay. All right. Yes. Thank you. With regards to your other question about what the scope of the agency's authority is here, we think that's best determined by just looking at the 316A4 and the language in 316A4. To the extent that you had provided two hypos, whether it's changing the conditions of patentability, we don't think it's doing that. But to the extent that it is a little less procedural and a bit more substantive. But you would agree that it can result in a different outcome in a particular case than the traditional obviousness analysis, right? It's possible, yes. I think it's possible. So that sounds like a difference in patentability. I would disagree with that. I mean, it is still a 103 analysis, and IPR is instituted. Yeah, but a different form of it. It's 103 prime. And 103 prime, as you've just admitted, can result in different results from 103. If that's so, then it seems to me it's difficult to argue that it isn't the condition of patentability that is where you have an alternative version of the patentability rule. So I'd like to step back from that just one step back. I think what we are saying is that, yes, the question that you had asked previously is whether it would result in a different outcome than common law collateral estoppel. I think, yes, there might be instances where it would come out differently under common law collateral estoppel. But it is still, I mean, 103 analysis. And it is still, you know, it- But 103 directed at a patent that was not part of the prior art as opposed to 103 directed at something that isn't the prior art. But that's exactly what common law collateral estoppel does. It compares the things- But only under certain circumstances, not needed, some of which are not needed under the regulation to be applied. Well, those circumstances are already sort of the other factors that are almost already built into our rule, right? Our rule only applies- Almost. It comes very close. Right, but you still acknowledge that it can produce different results from common law collateral estoppel in some cases. I think it can, in very rare instances, it can result in a different outcome. But I don't think that's necessarily a substantive difference. Do you think common law collateral estoppel would be applicable here in this case? Under the facts of this- Under the facts of this case. Yes, I think so. Because the patent owner didn't necessarily make some of the arguments with respect to common law collateral estoppel that it could have made. It didn't necessarily, you know- What the patent owner- This entire case is built around a collateral attack on the claim construction in a prior proceeding. That is the patent owner's, that is Sotheby's primary argument. We don't think that changes whether it's common law collateral estoppel or you're doing it under a patently distinct standard. Perhaps if they had made certain arguments below about some of the elements of common law collateral estoppel, maybe we would have a different case. But they didn't necessarily raise those arguments below. We think this is a common sense rule. It simply prevents the patent owner from recapturing claims that they lost after a final adjudication. That makes a lot of sense. So, Counselor, 316A4 gives the PTO authority to promulgate regulations, but wouldn't you agree not substantive rules? I disagree with that, Your Honor. You disagree with that? Yes, I think CLOSO is very clear. The agency has authority to promulgate. Can it change our precedent? That precedent is specific to Section 2B2. The Supreme Court in CLOSO was very clear that when you look at the four corners of the AIA... Relying on this statutory provision, can you pass a regulation that challenges our precedent? I'm sorry? That challenges our precedent. I think what CLOSO said was, regardless of what this Court's precedent says about Section 2B2, 316A4 is different. The language in 316A4 is different. The authority there is very broad, and it encompasses something more than just procedural rules. And what CLOSO said is, this framework of trying to figure out whether a rule is procedural or substantive, and deciding whether or not the agency has... If we were to find that your interpretation or reliance on collateral estoppel in this particular case is a substantive rule, you're saying that's still okay under the statutory provision? I'm saying that this rule is a procedural rule. We think it's a procedural rule because all it does is it prevents an applicant from making inconsistent... I thought I heard you argue in the hall ago that it's a little bit substantive. I think so. I mean, I think... How much? 30%? I think to the extent that it requires the patent applicant to do a little bit more work, maybe it's a little bit more substantive, but I don't think it makes it a substantive rule. That was my point. Do you have a closing thought? We think this rule is a common-sense rule. It's consistent with the statute and its application to inter-parties re-examinations is consistent both with the rule and with the authorizing statute. The authorizing statute is not limited to examination proceedings. It says all other proceedings of the agency and the regulation is also broadly worded. Even if you don't agree with us on the obtained language, the language is not limited to that because of the including language. Thank you, counsel. Mr. Burnett has some rebuttal time. We're going to give you three minutes. Okay. First I'd like to begin with footnote 6, which I was actually going to raise before you guys raised it. So this talks about supplementing the examiner's finding has layout design limitations via a new ground of rejection based on findings passed to Zaurus. Zaurus isn't a patent Zaurus, as it was a manual for a PDA from Japan. By way of issue preclusion. Now, they've already identified that. Issue preclusion or collateral estoppel does not apply. It's not present. But this would be bringing a new ground based on art that wasn't even sought. You had no chance to argue. There's rules in inter-party re-exams where the petitioner can add a new reference. They do not do this. And I want to also distinguish inter-party re-examination from ex-party re-examination and then from just plain ex-party examination. And this is a quote from SINCOR. The participation of the requester provide both argument and evidence distinguishes the examinational nature of the inter-party's re-exam from the initial examination process or ex-party re-examination. Even if this process is not formally adversarial in the manner of inter-party review, it provides adequate adversarial participation for both the patent owner and requester facilitating a reasoned judgment on the issue before a neutral fact finder. I also would like to address the comment concerning the 322 claims. Let's say that this court finds that the application of the rule is okay and they can use claims that are not patently distinct even under the new claim construction. Softview argued that there are many claims including claims for real-time zooming, tap-to-zooming, billions of pages preserved that are patently distinct over the claims that were canceled. And then finally, with respect to collateral estoppel, the director argues that this wasn't presented by Softview. We have 12 pages beginning on page 19 of the blue brief that explain why common-law collateral estoppel doesn't apply. So Softview went into great detail explaining why it's not present under In re Freeman, all four prongs of In re Freeman. None of those are present. It's argued by Softview. Are there any other questions you have? Thank you, counsel. I will take the case on the submission.